IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

April 22, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

GENE V. AABY,          )     FOR PUBLICATION
                       )
     Plaintiff/Appellee,    )     Knox Chancery
                       )
v.                     )     Hon. Frederick D. McDonald,
                       )     Chancellor
JUDY E. AABY STRANGE,       )
                       )     No. 03S01-9507-CH-00073
     Defendant/Appellant.   )


DISSENTING OPINION


I dissent from the decision reached by the majority which, as a practical matter, endorses a third move for this young child who has just reached school age, because the formulation of the rule, in my estimation, undermines the important efforts of those non-custodial parents who work diligently to be more than every other week-end mothers and fathers. While adjusting visitation schedules to accommodate a move aims to allow the non-custodial parent a continued relationship with the child, it does nothing to accommodate or encourage the non-custodial parent who wants to attend Johnny's choir recital; Mary's soccer game; or both children's monthly parent-teacher conferences. The rule set forth by the majority allows a custodial parent to relocate to a distance that, in effect, prohibits the important non-custodial parental involvement described above. The move could be for no reason at all, so long as it could not **be proved** that the move was "**vindictive**" or **"intended"** to defeat visitation rights. I believe that such an approach unduly impedes that which we all desire -- an opportunity for children of divorced parents to have meaningful relationships with both parents despite the parent's inability to remain married.

Rather than the rule set forth by the majority, I would require the custodial parent to establish some reason for the move that was unrelated to the

non-custodial parent's parenting rights[1].  Additionally, I would require the custodial parent to demonstrate that the move would not be adverse to the child's social, educational, psychological, and health needs.  After such a showing by the custodial parent, the move would be allowed unless the non-custodial parent established, by a preponderance of the evidence (1) that the move was for reasons related to interfering with, defeating, or undermining the noncustodial parent's parenting rights;[2] or (2) that the move would pose a specific, serious threat of harm to the child.[3]

Such a rule would oblige the custodial parent to deliberate his or her decision to move since it would require the custodial parent to initiate the action in the court in the event an agreement concerning visitation could not be reached.  This, I believe, would serve to impress upon the custodial parent the need to ponder the decision and to evaluate it in light of all the facts and circumstances, including those pertaining to the child.  Such a rule would not impede the custodial parent's freedom of movement, which the majority deems so essential; it simply would impose upon the custodial parent the obligation to consider whether the exercise of that freedom is consistent with the needs of the child who the parent has requested the exclusive right to parent.  It would not bury, as I believe the majority rule does, a consideration of the child's interests.  And it would not destroy the efforts of those parents not fortunate enough to be awarded custody -- be that because of economic or gender stereotypical reasons

---

[1] By "non-custodial parent's parenting rights," I refer to all the rights related to the non-custodial parent's relationship with the child which includes, at a minimum, visitation rights, but which also includes the right to participate in the child's educational, social, religious, recreational, and related activities that occur on non-visitation days.

[2] Examples of such a move would be one for the purpose of defeating  visitation, interfering with the non-custodial parent's relationship with the child or participation in the child's activities, or deterring the non-custodial parent's involvement with or development   of a relationship with the child.

[3] Examples of situations that would pose a "specific, serious threat of harm to the child" would include, for example, a move that would take a child with serious medical needs to an area where no adequate treatment was readily available; a move that would take a child with special educational needs to an area with no adequate educational facilities; or a move that would place the child in close contact with a person with a confirmed history of child abuse or violence.

-- to participate fully in their children's lives in a more meaningful way than every other week-end, or perhaps, more likely, four weeks in the summer, allows.

_____
Penny J. White, Justice